I'm here on behalf of FBI Special Agent Jake Gregory. This case involves the arrest of Julian Christopher Lee in a case of mistaken identity. The question presented is whether Agent Gregory is entitled to qualified immunity for his role in the arrest. The district court found that some re-judgment on this basis was precluded because the triable issue of this case concerning whether Agent Gregory knew that plaintiff's brother, Robert, and not the plaintiff, was the person sought by the Florida arrest warrant. Let me ask you a question about that. We have a case law which indicates that if the district court has denied qualified immunity on the basis of triable issues of fact, then we lack appellate jurisdiction over that. Now, there seems to be a difference in cases where the facts are either undisputed or we assume the facts as articulated by the plaintiff. Where does that leave us in your view on this case? Do you think there, I mean, if there are genuine issues of material fact, it seems to me we lack appellate jurisdiction. But are you arguing the basis of assumption of the facts as asserted by the plaintiff here? We're making two arguments. Really, we're saying, assuming the facts are alleged by the plaintiff and also that the facts that the district court identified as being material are not material to the legal question of whether the agent was entitled to qualified immunity here. Okay. Go ahead. How the district court fundamentally erred was in failing to properly apply the qualified immunity test that was set forth by the Supreme Court in Katz. And under the Katz case, the first question is whether there was a constitutional violation at all. Here, the question is whether the Fourth Amendment was violated. The Fourth Amendment prescribes unreasonable seizures and a warrant that's supported by probable cause is a touchstone of reasonableness under the Fourth Amendment. Now, there's no dispute in this case that the Florida arrest warrant was facially valid and it therefore provided the probable cause for the arrest of Christopher Lee. So the question is whether it was reasonable for the agent to conclude that the plaintiff was Christopher Lee who was found in Florida and for him to pass the warrant on to the local authorities to make the arrest. Now, the facts that were, or the information that we rely on in supporting the reasonableness of Agent Gregory's actions in this case are that he knew that although the plaintiff's name was Julian, he's also known as Christopher Lee. And he had a facially valid Florida arrest warrant for Christopher Lee that matched the date of birth, Social Security number, race, sex of the plaintiff, and also fit his general physical characteristics. He also knew that there was information in the FBI file that gave an address for Christopher Lee in Florida. Based on these objective facts, he had reason to believe that the plaintiff was the Christopher Lee who was being sought in Florida. Didn't he have some other information that gave him reason not to think that? We don't really believe so. Now, the district court... Well, so let me, we're going to take these facts as stated by the plaintiff. He had reason, didn't he? Well, the facts that were relied on by the plaintiff to show that he had reason to believe he was. Well, when you take the facts, you're not disputing the facts. Tell us the facts the plaintiff put forward to give him reason to know he had the wrong man. What are those facts? The reason, the facts that the plaintiff relies on are that there was a discrepancy in the height of the person who was described in the warrant and the plaintiff, and there was a discrepancy in the weight of the person described in the warrant. Is that all? No. Also, that there was information that the FBI knew that a plaintiff's brother, Robert, who was a fugitive, had used plaintiff's identifying information as an alias in the past. Well, counsel, there are actually four different elements that indicate knowledge that the warrant didn't describe the person arrested. Number one was the knowledge that the agent had that the brother had appropriated his date of birth, his social security number, and his name. Secondly, the physical description on the wanted poster by the FBI. He was described as six feet, 160 pounds, or 180 pounds. On the warrant, he was six foot one and 200. And, in fact, Mr. Julian was 6'3 and 270 pounds. Third, there was no evidence that Julian had ever been to Florida in his life, but Robert was seen in the southeastern states of the USA, and the agent knew that. And fourth, there was evidence that Julian had been in Alabama, pardon me, in Alaska in 1997 and had been living in California in 1998. So there was evidence from which a reasonable trier of fact could say, could not, that the agent knew or should have known that Julian was not Robert. You know, and I'd have to disagree with you there. Those facts that you give, now there was a, true, there was a difference in the height and weight, first of all. But the difference in the Florida warrant and in the description of the suspects out there and the difference in the FBI warrant for Robert was about the same, you know, it's not that much different because he was listed as being six feet tall and weighing 160 pounds. The warrant listed a suspect as six foot one and 200 pounds. There was information that the plaintiff was either six foot two or six foot three, and that he weighed 270 pounds. That's a big difference, isn't it? Yes, there is a, that is a large difference. We would have noticed that in the Super Bowl, wouldn't we? Perhaps we would, but sometimes there are discrepancies in height and weight in official documents for the same person, and there are a number of courts that have held that differences such as those are not enough to invalidate a facially valid arrest warrant. And here, there were, those discrepancies weren't significant enough to invalidate. Isn't what is significant or not significant to invalidate a facial, facially valid search warrant a matter of fact? And not a case-by-case analysis. Well, it's not something that a jury would need to determine. Here, I think you can look at what is not, it's what a reasonable offender, you could have two different officers who would be confronted with those same facts, and one of them might think that that was reasonable, it was reasonable that the plaintiff was the person sought in Florida, and another officer could decide that he's not. But when there's room to differ between two reasonable people, then the agent is entitled to qualified immunity. Let me ask you about that, because I understand your point on the subjective versus objective analysis. But Katz also says that qualified immunity protects, well, let me quote it, all but the plainly incompetent or those who knowingly violate the law. If we take as a matter of fact that the officer assumed the fact that the officer knew this was the wrong person, why doesn't that fall outside the protection of qualified immunity? Well, we have to still, when you're looking at qualified immunity, you have to set aside subjective beliefs. Well, I understand that, but it seems to me that the phrase knowingly violate the law establishes perhaps a category that's different from those who might otherwise be entitled to the protection of qualified immunity. Well, if there was some evidence here other than conclusory allegations, because plaintiffs, even after discovery, in response to Agent Gregory's motion for summary judgment, only were able to come forward with conclusory allegations that he knew that the plaintiff was not the person sought. Agent Gregory had never seen the plaintiff. No, but he called him up and said, I want to find your brother. I'm looking for your brother. Well, he had made inquiries in... He thought he was, not to interrupt, but the agent thought that the person he was talking to was not the person to whom the warrant applied, and he said, you're going to suffer and we're going to take you to Florida unless you cooperate. The agent had... Inferentially, I mean, inferentially, if you accept the facts as tenor by the plaintiff, that might indicate that at least a tribal issue fact is whether the agent knew this person. Well, the plaintiff's declaration, I believe, is where he makes the allegation that Agent Gregory had indicated, made some statements indicating that he would help him out in Florida or that he was actually trying to get information on his brother. But I think objectively, you can't just take his bare allegations that Agent Gregory had the sinister motive and you look at the totality of the circumstances. No, we don't look at his motive, we look at his information. Right, you look at the information that he possessed at the time that he acted, and you look at all of the information, a reasonable officer could conclude that the person sought in Florida was the person, was the plaintiff here, because there was enough of a match between the descriptions of the person that were described on the warrant and even the conversation that Agent Gregory had with the plaintiff left him with the... He could have come away from that conversation with the belief that plaintiff was in fact that person in Florida, and that was why he didn't want to talk to him, it would have been so uncooperative. Okay, thanks. And I take it you're not related to any of the Lees in this case? No, I'm not. I'm a Lee by marriage. Thank you. Under this Court's decision in Armendariz v. Penman, three-quarters of the brief of the appellant and at least 70% of the argument is improper. The facts, assuming that there was a proper finding of factual dispute by the District Court, may not be re-argued in a summary judgment fashion or even as counsel has done, as though she were arguing to the fact finder or the jury in the case. Judge Keepe, who was fully familiar with the court's well-reasoned opinion on pages 238, 239, and 240 of the excerpt of the clerk's record, that the issue of Agent Gregory's knowledge that he was arresting the wrong person was an issue of fact, that there were disputed facts on both sides. We are entitled in arguing the case to have the facts, if they wish to assume any factual basis upon which to argue, assumed completely in the light most favorable to the plaintiff. Now, if I could just refer the Court briefly, excerpt of clerk's record, pages 84 through 89, show that Agent Gregory had knowledge in his file from multiple sources that the fugitive brother had used the name, date of birth, Social Security number, and other identifying data of Christopher Lee. It further showed that he used other family members' names. And, Judge Bea, I think you summarized the facts as they were properly found to be in dispute by the district court. The affidavit of Mr. Lee, which counsel says is not evidence, the affidavit, sworn affidavit, is evidence of the conversation that Agent Gregory had with him in the cell, in which Gregory said, not, I can give you some amorphous help, maybe in your Florida case, even though I'm a federal agent and I've not talked to anybody there save the warrant clerk. No, Mr. Gregory said to Mr. Lee, if you want to get out tonight, tell me where your brother is. You have a little bit different tone now than when you were talking to me on the phone, don't you? If you want to get out of here tonight, tell me where your brother is. Now, it is true he did not say, I am knowingly arresting you in order to coerce you to give me information, but a reasonable inference from the statements made by Gregory clearly show that he, or give rise to the inference and for purposes of this appeal, must be assumed that he knew he was arresting the wrong person. And in fact, the argument that has been made both in the brief and here, that quote, this is a case of mistaken identity, absolutely disingenuous and inappropriate under the case law and under the facts of this case. If it were a bonafide mistake of fact, there's no question that as a defensive matter, Agent Gregory should be out of the case. Even if he made a negligent mistake of fact, he's out of the case. But we said, and the evidence proffered before the trial court clearly showed that there was substantial evidence to support our position that Agent Gregory knew. The only legal issue under Armendaris v. Penman and under the Supreme Court case of Johnson v. Jones, Mitchell v. Forsythe, that can be properly argued, is that assuming the plaintiff's version of the facts is true, that Agent Gregory procured plaintiff's arrest with the knowledge that plaintiff was not the person sought in the warrant, so that he could pressure plaintiff into providing information on the whereabouts of his fugitive brother, that he is still nonetheless entitled to qualified immunity some way. To my mind, to ask the question, to put the question that way, which is the only way under the case law and the rulings of the district court, that this court has jurisdiction to decide any question whatsoever. To say, if an agent knowingly arrests someone he knows to be the wrong person for the purpose of coercing him into giving information and to punish that person for perceived disrespect to the agent, is nonetheless something that a reasonable officer could believe is legal, is to answer the question. If we're wrong on that, then we lose the case. Well, as I understand Ms. Lee, what she was saying is that we're constrained simply to look to see whether there are objective indicia that would allow the arrest to be made, regardless of what the agent knew subjectively. No. Well, they argue this Wren issue completely out of context. And they would have every Fourth Amendment issue turn on objective facts. But there's a difference, I submit to the Court, between some subjective intent that you know you have probable cause for A, but you're going to also search for B, which Wren says is appropriate. We're not going to inquire into any subjective, hidden intent. We're basically doing away with the pretext line of cases. And the issue of knowledge, which is central in every Fourth Amendment case. What did the agent know? And knowledge is something that is an objective fact. I think it was Holmes that said the state of a man's mind is as much a fact as the state of his digestion. And so the knowledge of this agent is critical in any Fourth Amendment analysis. And the issue is what did he know? And for instance... I think what has to come out of the equation is what did he intend? In other words, if he intended to punish, that's not part of the equation that we consider, or not part of the calculus on qualified immunity. But I think the point you make is an interesting one that I'm not sure that we have. It's whether or not the subjective belief or knowledge that you've got the wrong guy can form a part of objective factors. Well, I think there's always, in the qualified immunity context where you're talking about qualified immunity as an objective standard of a reasonable officer, but the substantive and underlying law sometimes involves intent issues or knowledge issues, how you... Yeah, knowledge not intent. And what I was trying to say is that in the Fourth Amendment context, the knowledge that an officer has is not something that we shy away from. We look directly at it. And if he knew he was arresting the wrong person, that is in no way violative of any qualified immunity principle. For instance, and in the Fourth Amendment context, we often inquire into the officer's knowledge and state of mind. You can't do a Franks versus Delaware analysis without asking, did the officer know that he was saying something that was false or act with reckless disregard or truth of falsity when putting something in a warrant? Because if he didn't know, if he was mistaken, that's a good warrant. But if he knew that there was falsity or included with reckless disregard or truth of falsity and it was on a material matter, the warrant is no good. So in that situation, you look directly at the officer's knowledge. That's the Fourth Amendment issue, Franks versus Delaware. So in this matter, it's very simple. And I would put the qualified immunity inquiry in this formulation. Would a reasonable officer who knows he is arresting the wrong person objectively believe that that is not in violation of the law? The question is not whether some could have been confused. If Gregory himself was confused and he can establish to a jury he just made a mistake of fact or even that he was negligent but that he didn't know or act with substantial and reckless disregard, he's entitled to a defensive verdict on the given cause of action. But in this case, we contend the trial court found that there was no reasonable agent knowing he's arresting the wrong person can conceive that that is consistent with the law. That is not acting in a gray constitutional area. That's transgressing the brightest of all possible constitutional lines. Thank you, sir. Thank you, counsel. The case, as heard, will be submitted and we will proceed to the next case on the oral argument calendar, Sullivan v. United States.
judges: Noonan, Thomas, Bea